Case number 15-3175, Shannon Graves, et al. v. Mahoning County, et al. All arguments not to exceed 15 minutes per side. Mr. James Vitullo for the appellants. Good morning. Good morning. James Vitullo for the appellants. I'd like to reserve two minutes. Your Honors, in 2010 we filed this complaint against Mahoning County and the Township Police Officers because when they would arrest defendants, they would completely ignore the Fourth Amendment. What I mean by that is the Fourth Amendment requires an independent, qualified magistrate or judicial officer to make a substantive probable cause determination. Our allegations in our complaint show, along with 300 and so exhibits, that that doesn't occur there. As I stand before you today, six years later, the same abuse takes place. A detective will walk into a clerk's office in one of the Township Police Departments and say to the clerk, I want to charge this gentleman with this crime. The clerk would then type up the form complaint pursuant to statute and sign it. Without any information in front of her, without a narrative, without the facts, impossible to make a probable cause determination. It still goes on today. The District Court, the first time, this is the second time we were here, the first time dismissed our claims on heck and res judicata. This court reversed, sent it back. The trial court again dismissed our claims. What did Judge Leoy get wrong in saying you need to show that the plaintiffs were arrested without probable cause? In other words, even if we agree with the key thing you've led with, that what the county and the township are doing is not consistent with Fourth Amendment law. So let's just say we accept that premise. I'm not sure you're right about the clerks, but let's just say we accept the other premise. Judge Leoy said, well, all well and good, what about probable cause? What's your answer to that part of the decision on appeal? In Whiteley, the Supreme Court already rejected that argument. In Whiteley, the court later on in the opinion said there was no probable cause. So why would they do that if Judge Leoy wasn't right? There's a factual distinction. Judge Leoy is focused on the officer that actually made the arrest and whether or not he had probable cause. In our case and our allegations and our complaint are that there will be a charging officer, the clerk's involvement, and then an arresting officer. The arresting officer will only have this complaint that's invalid and make an arrest. No independent basis for probable cause. If you use Judge Leoy's reasoning, then you don't need the Fourth Amendment. As long as the police officer in his mind has probable cause, the test doesn't go to the Fourth Amendment magistrate or judge. You ignore that step. And that's what's happening in Mahoney County. There's a charging officer and an arresting officer. So tell us where in the complaint, because this is a complaint case. This is not an evidence case. Where in the complaint, what provisions of the complaint do you say allege that these individuals were arrested without probable cause? That's just it. We don't allege that. We allege that a judicial officer never made that determination that's required by the Fourth Amendment. We can't make that statement. We don't know. The officer's probable cause has never been tested. But I mean, I guess the thing that seems puzzling is why shouldn't it be a requirement that the actual plaintiffs here be able to say, they arrested me for prostitution in Youngstown on this date. Someone said they saw me engaged in the act on this date, and you come forward and say, you didn't have probable cause. I was in Florida. It's the wrong person. In other words, what's so bad about the requirement? I don't understand why you're running from the requirement that the plaintiffs ought to be able to say there was no probable cause as to them. That's what makes it unreasonable. We're not running from that, Your Honor. The county and the townships are running from the Fourth Amendment. They are required to conduct this step. I get one part of what you're saying, and I think there's a lot to it. But another way of putting it is, you know, a violation of the Warrant Clause does not always establish a Fourth Amendment violation. That's another way to think about this. It refers to unreasonable search and seizures. And what usually makes a seizure unreasonable is there's an absence of probable cause. It's not who saw, who made the arrest. It's that there's just an absence of probable cause. That's what 9 out of 10 times makes it unreasonable. And so since you have to show a violation of the Fourth Amendment, not the Warrants Clause, to get into the door, that's the pleading defect that I'm seeing, or at least I'm wondering about. That's interesting that you say that because the requirement for a search warrant is identical to that for an arrest warrant. And in Mahoney County, a police officer, when they want a search warrant, will prepare a nine-page affidavit, and they will go to the county courts. I practice in those courts. And they will sit there, and they will wait for a judge. They won't go to a clerk. They know the procedure for search warrants. But when it comes to an arrest warrant. The usual relief there is the suppression of evidence, right? If that's an issue in that particular case. Or a bad search warrant. What are you seeking in this case? Damages against the officers or damage against the counties or both? Well, injunctive relief mostly. We want the county and the police departments and the clerks to actually conduct a substantive probable cause determination by somebody that's capable of doing it and somebody that's independent from the police and the prosecutor. We don't have that here. State law provides for these clerks to issue the warrants. And we have no problem with that. But they still have to adhere to the Fourth Amendment. There has to be a probable cause determination. Once that's done correctly, and the complaint is typed pursuant to the rules, the clerk can sign it. We don't have a problem. We don't have an issue with that. You admit officers can arrest with probable cause without a warrant, right? I'm sorry? Officers can arrest with probable cause without a warrant. They can, but then they have 48 hours within which to apply for a probable cause determination. Yeah, but that's another problem there. But that's a different argument. That's the argument. Why did you bring the 48-hour argument in your complaint? I didn't see that in the complaint. Because we're saying that the charging officer and the arresting officer are two different people. That's what the court relied on when they dismissed us. That's not a problem if the first one writes out sufficient for probable cause. A second officer can go serve the warrant, can't he not? If they get a probable cause determination, yes, that's not a problem. We skip that step in Mahoney County. A judicial officer never sees the officer's narrative, his report, to make that determination. There's nothing in front of the clerk that signs the warrant that lets them make that determination. That's the basis of our case. So just to be clear, you're not bringing a 48-hour claim, or you are? No, we are not. One of the things that's funny is why you're in federal court. We have this law that talks about you can have arrests without a warrant as long as you have probable cause. We have case law that seems to say, yes, it's important to have firsthand information as to what the probable cause comes from. But you don't have a claim if there was still probable cause for the arrest. So one question I have is why didn't you go to state court? It sounds like there's some very good state law for you. Mahoney County is out of the ordinary, and it seems like the state courts would say, what are you doing, Mahoney County? Let's get this straight. You would think that. We filed a writ in the Ohio Supreme Court. It was rejected. They didn't take it on the merits? We've tried. Is that the only way to go? You can't go to common police court? We filed, and some of the defendants, we filed motions in their criminal defense arguing this claim. But it got nowhere. They were summarily dismissed. It's so ingrained. The problem with the procedure is that you don't want to have to undertake this analysis in each individual criminal case. Is that correct? So what you're looking for is some sort of ruling that the procedure itself is improper. Correct. And it's systemic. They do it in every case. Unless the case is directly presented to the grand jury, and that's the only satisfactory probable cause determination through the whole process. Some of my defendants in these cases still have never had that determination as I stand here today. Are you asking for injunctive relief, or is this just damages here? Injunctive relief and damages and class certification because it happens in every case. It's not one case. It's every case. It happens so often. Why isn't it easy to find a plaintiff for whom this happened, number one, and number two, there was no probable cause? Because then you solve all the problems. You get your thing fixed. You get your damages. So if there's thousands of these, you'd think there must be quite a few where there wasn't probable cause. Arguably, this plaintiff, Shannon Graves, is one of those people. Bingo. And she's the plaintiff in this case. I know, but you didn't bring that claim here. We'll tee up your argument, but we can't do it here if that's not the complaint in front of us. I mean, you just acknowledged. Tell us why your complaint should survive if it does not allege the arrest without probable cause and it does not allege failure of a judicial determination within the 48 hours. Because we believe it's the government's obligation to make a probable cause determination. It's hard for us to allege that there was no probable cause when it was never tested at that level, that it was skipped completely. Just ask your client. Was there any evidence of this? And the client's like, I have no idea where this came from. I was just doing my homework, and boom, they arrested me. And then you say in the complaint there was no probable cause that this person violated this law. But that's not our complaint, Your Honor. I understand what you're saying. Our complaint is that they ignore the Fourth Amendment. I would say they're ignoring part of the Fourth Amendment. That would be my thing I would ask you to think about. In looking at your discussions and the provisions of the complaint, I would have been inclined to think that you're 58, 55, 59, saying that these complaints are so lacking in any indicia of probable cause that any officer relying upon them is acting unreasonable, or the person who makes the custodial arrest, that that officer has no personal knowledge, or the custodial interrogation is used to secure probable cause because that was missing in the first instance. But you disclaim that as a claim, that there's no probable cause. I think those are collateral problems with my main issue, which is the government ignoring the Fourth Amendment. Those are all issues, but I'm focused on the fact that they completely ignore that procedure. Okay, well, we're focused on the law, the federal law, that says you may arrest somebody with a proper arrest warrant, or you may arrest somebody without an arrest warrant if you have probable cause, but your allegations don't address that second circumstance. The court focused on that, too, and I think that's part of the problem. Even if a police officer makes an arrest, a resisting arrest, let's say, and that person is in custody, that police officer has to apply for a probable cause determination, basically apply for a warrant and present his facts to a judicial officer who's independent from the police and the prosecutor. And that judicial officer has to make a probable cause determination based upon his report, what he saw when he made the arrest. It's not up to the officer. It's up to the Fourth Amendment to make that determination, and a judicial officer has to make it, not the police, not the prosecutor. Okay, I think we understand your argument. We'll hear from the government, and you'll get your rebuttal. Thank you. Good morning, Your Honors. My name is Jim Matthews. It's my privilege to be here this morning on behalf of the Township Appellees. There were three primary things that we addressed before the district court and I think are fair game for us to discuss this morning. The most important thing to discuss is the first basis for which the district judge granted the motion to dismiss and which has been discussed during the appellant's presentation, and that is relating to this issue of whether or not there was a direct challenge to probable cause for arrest of these plaintiffs. And what I heard this morning was the acknowledgment or concession, very candid indeed from appellant's counsel, that there is no claim in the case, there is no claim articulated in the complaint, that these plaintiffs, these appellants, were actually arrested without probable cause. I believe that's fatal to the case under Webb and under the Xenia case that's cited in Webb and now under Judge Leoy's opinion in this particular case. In the absence of a direct allegation by the appellants that their particular arrests were without probable cause, then there is no way to tie in some policy or custom argument that there is a systemic policy or custom of the Township Appellees I represent to cause arrests without probable cause, which would arguably violate the Fourth Amendment. But you would concede that there are sufficient allegations that these clerks had a rubber stamp procedure and made no probable cause determination in issuing the arrest warrants. Clearly a direct allegation of that. That's right. Now that leads right into my second point on dealing with the Monell issue from the perspective of my appellees. We have to look first at the status of deputy clerks in this system. And that's articulated, I think, very clearly in our briefs. I'm not here to belabor the points that are briefed. But if you look at it logically, we know that both the revised code, the Ohio revised code, as well as Criminal Rule 4 promulgated by the Ohio Supreme Court, allow district clerks, court clerks, deputy clerks to make probable cause findings. That's number one on their capacity. Their capacity in the system then has no connection, no relationship whatsoever to the township forms of government that I represent. The deputy clerks serve directly under the clerk of the court in Mahoning County, who is a county official. But the case law is clear. When those county officials, however, are performing the function of judicial officers, including the function of making findings of probable cause, they're actually state officials. Well, is that still true after the Supreme Court's decision in Regents of the University of California case? Yeah. It's my position that it remains the case that these are state officials that are acting for the court. Even though that case talks in terms of the relevant question being who would pay for the damages judgment? Well, again... Who would pay here? I guess that's the question. Who would pay? If the clerks were doing something faulty, and you can pass through their relationship to the state and any 11th Amendment immunity they may have, it would be the county who would then be responsible as a fallback for their conduct. But it does remain my position, and it's clearly the county's position, I know they're not here to argue today, but they have briefed that position as well, that the deputy clerks are serving a state function and are state officers when they're making findings of probable cause. What about the county prosecutor? The county prosecutor plays a very interesting role in this case, and it's very crucial to my Monell arguments that I addressed below and have briefed in this case. When you look through... We've dealt with the issue of there being no allegation of no probable cause for arrest of the appellants. We then have to look at what was the allegation of some custom or policy upon which to attach municipal liability in this case. It was always directed back to the county prosecutor in his role of statutory legal counsel for the various entities. There's a revised code provision in Title III that provides that the county prosecutor serves as the statutory legal authority, legal counsel, not only for township entities like my appellees, but also for all of the county boards, all of the independent prosecutors in the county that handle the lawsuits, and the only allegation of a policy or custom in this case was that the county prosecutor had promulgated and put out a policy of having these so-called bare-bones complaints brought before nonjudicial officers for probable cause determinations. The only effort at all to tie that policy to the township is an allegation that township police officers relied upon that policy promulgated by the prosecutor. That's all that's in the complaint. There are two specific paragraphs that relate to this policy. Isn't there an allegation that there was a widespread policy and that it was a policy entered with the discretionary authority of the county prosecutor, and doesn't that make a difference? That it is the county prosecutor. You then have to look again at the statutory role and the functional role of the county prosecutor vis-à-vis the appellee townships. Statutory legal counsel, and that's it. There is no case authority. There's nothing to suggest that the county prosecutor, in formulating a policy for the courts to function under, what I am arguing is a state function, that somehow that connects back to the townships being a policy upon which a township could be held liable under Monell. And I would extend it further. My argument is not only is the county prosecutor not serving in a policymaker role for the townships in making this alleged policy for the courts, he is also, to the extent he is advising township police officers, not somehow elevating the status of a township police officer. A township police officer is not in the role of policymaker when filling out paperwork and walking in front of a desk to have a finding of probable cause. So I believe that the district court was correct not only in the first conclusion we addressed, but also in addressing Monell here in finding that there was no allegation upon which to advance a municipal liability claim against the appellee townships. But if the first problem is fatal, you don't have to get to the second one, right? Because if there's no constitutional violation, there's no Monell issue. Am I right about that? That is correct, Your Honor. You said you were going to make three points. Yes, Judge. Did you slide in from the second and the third just now? No. Or is there still a third one that the suspense is building for? Well, I'm glad for that. One and two have been handled, and I will move on to number three. And that is my argument that I advance below and advance here on res judicata. The district court also agreed that if you carve out the two claims of Ms. Sexton and Ms. Graves, those were two individuals who entered guilty pleas below, their cases were dealt with. Their issues of whether or not they could advance their claim or res judicata applied was dealt with in the first appeal. I've never tried to reassert that. Why would res judicata from a criminal proceeding with very different rules and evidentiary requirements constrain a civil proceeding? Because that's the way Ohio law applies very broadly principles of res judicata, not only claim preclusion but issue preclusion. And as we all know, the federal courts do their best to follow the state law that's applicable in determining the extent to which res judicata would apply. And you think that in your state there is no distinction drawn between findings of facts or conclusions drawn in criminal proceedings and their usability in a civil proceeding? That's correct. Do you have a case? We've briefed that. Dobben-Meyer is a case from this court which supports that proposition. That was an underlying criminal proceeding where there was an issue that was not advanced that the court said could have been advanced and applied Ohio law and res judicata. There's then the 5455 Clarkins Drive case, which was a case I had the privilege of arguing before the bench some years ago, which dealt with underlying criminal cases in which the constitutionality of First Amendment challenge to some signed regulations could have been advanced but was not. And a panel of this court also held that res judicata broadly applied under Ohio law. Here our record is that indeed a number of the appellants did advance these exact same Fourth Amendment issues, not only in the context of a petition for prohibition before the Ohio Supreme Court. That matter was not reached on the merits. It probably has very limited utility in a res judicata argument, but nevertheless I've pointed it out for the record. Our res judicata argument really relies upon the fact that the appellants advanced a motion to dismiss in their underlying criminal cases. There has been some suggestion that there really isn't a proper mechanism for that, that there is no way to bring that form of Fourth Amendment challenge in your underlying criminal case. What about our Anderson v. City of Blue Ash of the Sixth Circuit 2015 case that, by my understanding, held that Ohio courts don't give preclusive effect to factual determinations made in earlier criminal proceedings or legal defenses that have fact-intensive inquiries affected by the difference between civil and criminal fact-finding procedures? How do you distinguish that? And I'll be candid with you, Judge, that I'm not familiar with the case that you're citing. I don't know if it's distinguishable from the cases I have relied upon. I'm just taking the position that there is Ohio authority, not only cited in the brief but also cited in both 54 Clarkins and in Daubenmire, supporting the position that an underlying criminal proceeding can be used to enforce res judicata principles. And again, I wish I could answer your question squarely on any distinctions that are out there, but I have to be candid with you. I can't address Anderson on that point. You finished with res judicata. I have one more question. Okay. All right. On Monell, why wouldn't there be here a failure to train or a custom of inaction theory since it's clear that these clerks are not trained to make probable cause determination and no one is requiring them to do so? Well, there's never been an allegation of a failure to train or some deliberate indifference theory advanced. It's never been alleged, never been articulated in any of the briefing in this case. And once again, on behalf of the appellee townships, I would have to suggest to you that if any type of claim like that were to be interjected in this case, it would not flow back to the townships in terms of alleging municipal liability. Township government under Chapter 5 in Ohio is very limited. We don't control functions of any courts. We certainly don't control the probable cause findings by the courts. A number of the townships do operate police departments, but there's never been an allegation that somehow the police officers are not trained properly by the townships. In fact, the exact opposite has been the argument. The argument has been that the police officers are following the legal advice of the county prosecutor in the mechanics of going about a probable cause finding. Final couple of points. Real quick on the Ray Estrada point is under the State v. Jones case that's been, interestingly, relied upon by the appellants. That's a 7th District Ohio Court of Appeals case that actually authorized a form of remedy or relief if, in fact, there's been some improper use of a bare bones complaint and an improper finding of probable cause by an untrained deputy clerk. The Court of Appeals actually endorsed the process there of having your underlying case quashed. Here, there's no question that the exact same Fourth Amendment arguments were raised in the underlying criminal cases by these appellants, and while the judgment entry is not the type of opinion that we would expect from a bench like this, it does very clearly articulate that the motion was overruled. That became a final judgment on that issue when there was no effort to appeal in the underlying criminal cases when they concluded. Is that the only remedy under that? Is that the only remedy? I don't know that that's... Quashed, and then we don't have any civil... In a proper case, Judge, this kind of brings us full circle to the things we were talking about very early on. If, in fact, you had a plaintiff who was willing to step up and say, I've gone through my underlying criminal case, and I've had it quashed, and my arrest was without probable cause, you may then be able to articulate a Fourth Amendment violation that you could bring a claim against the police officer, a deputy sheriff, or someone else who was involved in the arrest. That's not the posture here, and that's not the style of the claims that were alleged. My final points would be addressed to the other very narrow assignment that's raised in front of you, and that relates to the refusal of the district court to allow a Fifth Amendment of the complaint. If you look at the record, what happened here is there was an initial motion to amend the complaint, and it was, at that time, to raise a constitutional challenge to Criminal Rule 4 and to its concomitant state statute. The district court allowed that amendment that had been proffered, and everybody understood what it was to be about, had allowed that amendment, and all of a sudden, out of the blue, a completely different amendment shows up purporting to add new parties and new plaintiffs and 30 or so new defendants. It's because that amendment did not conform to the one that was represented to the district court for which Lee was sought that it was initially stricken. And all the way down the line, when these amendments have come in before the district court, they have failed to comply with the order on what the amendment would consist of, and that's the reason for the refusal to allow this last amendment. Just one last question. Yes, Judge. If you've been litigating this for all this time, and you recognize that a viable claim could be stated if it were properly alleged, a practical question, why don't you fix it? May I take some additional time to answer that? Because that's a wonderful, practical question, and I can stand here and represent to you that the county prosecutor's office has taken efforts to correct it or change it, to alter the process. How do I know that strongly enough to stand here and represent that to you? I know it because there are two Court of Appeals opinions from the 7th District, which I will submit under Rule 28 in a letter form to you as supplemental authority. I typically don't take the posture of defending cases and looking at remedial measures and that type of thing, but here I think your question is very fair just to know if there's been a practical resolution. There were two challenges in a Sebastian Rucci case that went up to the Court of Appeals, raising these Fourth Amendment issues, claiming that there was a corrupt mechanism of using deputy clerks and insufficient forms and such, and in both cases the Court of Appeals has rejected that claim now. Did they lay out what the new procedure was? If we look at those cases, will we see what the procedure is? Yes, Judge, and that's why I will submit them to you. Essentially, in the proverbial nutshell for you, you will read in there that the deputy clerks are now testifying as to what they did to make their findings and what they relied upon, and perhaps the most important thing that you'll read from the case is— I think we should just read them, but I think you are going way beyond the record, and if I were sitting where Mr. Vitullo is, my blood pressure would be increasing at this point. You were asked, so it's fair. Mr. Vitullo, do you want some rebuttal? I'll wait for the rebuttal. Okay. All right, well, thanks to both of you for your briefs and oral arguments. We appreciate it, and the case will be submitted, and the clerk may recess.